No. 98-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 328 [56 St.Rep. 1303]

297 Mont. 336

993 P.2d 11

BYRON OLIVER and CAMILLE OLIVER,

Plaintiffs and Appellants,

v.

STIMSON LUMBER COMPANY, and

LIBERTY NORTHWEST INSURANCE

CORPORATION, an Oregon corporation,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Lon J. Dale (argued), Milodragovich, Dale, Steinbrenner & Binney;

Missoula, Montana

For Respondents:

L. D. Nybo (argued), Conklin, Nybo, Leveque & Lanning;

Great Falls, Montana

Jon P. Stride (argued), Tonkon, Torp, Galen, Marmaduke & Booth;

Portland, Oregon

William J. Mattix (argued), Crowley, Haughey, Hanson, Toole & Dietrich;

Billings, Montana

Argued and Submitted: June 15, 1999

Decided: December 22, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ Byron and Camille Oliver (Olivers) brought an action against Stimson Lumber Company

(Stimson) and Liberty Northwest Insurance Corporation (Liberty Northwest) for negligent and

intentional spoliation of evidence, along with a request to void subrogation rights, in the Fourth

Judicial District Court, Missoula County. The parties filed cross-motions for summary judgment

and following two separate hearings, the District Court granted summary judgment in favor of the

Defendants. We affirm in part, reverse in part, and remand.

¶ We restate the issues raised on appeal as follows:

¶ 1. Did the District Court err when it concluded that the exclusive remedy provisions of the

Workers' Compensation Act barred the Olivers from bringing a claim for spoliation of evidence against Mr. Oliver's employer?

¶ 2. Should Montana adopt the torts of negligent and intentional spoliation of evidence as independent causes of action?

¶ 3. Did the District Court err in awarding summary judgment in favor of Liberty Northwest Corporation?

¶ On appeal, the Olivers have not raised the issue of whether Stimson's subrogation rights should be impacted by its conduct and therefore, we will not address the issue in this appeal.

FACTUAL BACKGROUND

¶ Byron Oliver was employed by Champion International Corporation (Champion) at its Bonner mill from 1974 until the time of its sale to Stimson Lumber Company in November 1993. Following the sale by Champion, Byron continued his employment at the Bonner mill as an employee of Stimson.

¶ On May 9, 1994, Byron Oliver suffered a serious injury as the result of an industrial accident arising out of and in the course of his employment with Stimson. As such, Mr.~Oliver's injury fell within the parameters of the exclusivity provisions of the Workers' Compensation Act, entitling him to benefits.

¶ The Olivers immediately hired an attorney to represent their interests with regard to the work-related injuries sustained by Byron. Shortly thereafter, the Olivers' counsel began investigating the possibility of a third-party action associated with the piece of equipment involved

in Mr. Oliver's injury. As part of the investigation, the Olivers' counsel made a request for an inspection of the equipment involved in the injury. Stimson turned to its workers' compensation insurance carrier, Liberty Northwest, for advice regarding this request. A claims adjuster for Liberty Northwest contacted a local attorney, Larry Jones, who had previously represented Liberty Northwest and its insureds, and advised him of the request for an inspection. The claims adjuster requested Jones to be present at the inspection because Stimson personnel wanted Jones to explain the reason for the involvement of an attorney on behalf of the Olivers given that Mr. Oliver's injury was an accepted liability claim under the Workers' Compensation Act.

¶ An inspection of the equipment took place on May 18, 1994. Counsel for the Olivers, the attorney for Liberty Northwest and Stimson, the claims adjuster from Liberty Northwest, a loss prevention employee from Liberty Northwest, and various Stimson employees were present during the inspection. In addition, nearly everyone who participated in the inspection understood that the purpose of this inspection was so that counsel for the Olivers could decide whether there was any basis for a third-party lawsuit. Photographs and a videotape of the equipment and Mr. Oliver's work area were taken by the Olivers' counsel during this inspection.

¶ After the inspection, on May 20, 1994, counsel for the Olivers wrote a letter to Larry Jones, the attorney for Liberty Northwest and Stimson, requesting information concerning the equipment's components, copies of design drawings, wiring diagrams, a description of the assembly of the equipment and the as-built plans for the equipment. On May 23, 1994, Jones sent a letter to the claims adjuster at Liberty Northwest enclosing the request from counsel for the

Olivers. In this letter, Jones directed the claims adjuster to forward the request from the Olivers' counsel to the human resource manager at Stimson's Bonner mill so that they could then discuss how much information Stimson wanted to provide voluntarily. In addition, Jones explained in this letter the nature of the third-party claims counsel for the Olivers was interested in pursuing on behalf of the Olivers.

¶ On May 25, 1994, Jones responded to the request by the Olivers' counsel by stating that he had forwarded it to the claims adjuster for transmittal to Stimson personnel for review. In the meantime, counsel for the Olivers sent a letter to Jones on May 24, 1994, asking for a commitment from Stimson that the equipment involved in the injury remain intact to allow an expert to examine it. Counsel for the Olivers also reiterated their request for a copy of the as-built plans for the equipment.

¶ On June 13, 1994, Jones forwarded the May 24, 1994, letter from the Olivers' counsel to the claims adjuster at Liberty Northwest, recommending that the claims adjuster handle this request directly by talking with the human resource manager at Stimson's Bonner mill. On that same date, Jones sent a letter to the Olivers' counsel advising that he had sent the May 24, 1994, letter to Liberty Northwest for transmittal to Stimson for consideration.

¶ On June 22, 1994, the human resource manager for Stimson initiated a conference call involving Jones and the director of human resources at Stimson's corporate office in Portland. During this conference call, the requests contained in the letters from the Olivers' counsel dated May 20 and 24, 1994, were discussed to determine how much information Stimson wanted to supply to the Olivers voluntarily.

¶ On June 24, 1994, Jones responded to the requests for information contained in the May 20 and 24, 1994, letters from the Olivers' counsel. This letter did not specifically address the Olivers' request for preservation of the equipment and its components, contained in the May 24, 1994, letter from the Olivers' counsel. However, this letter stated that Stimson management had decided that it was unable to accommodate their request at this time due to the amount of time Stimson personnel would be required to spend away from their employment duties to provide the information. The Olivers' counsel responded by offering to pick up the information, have it copied and returned to Stimson and to pay for any reasonable employee costs involved. On July 13, 1994, Jones forwarded this offer on to Liberty Northwest and Stimson for consideration.

¶ Frustrated by the lack of response from Stimson regarding the information requested, the Olivers' counsel wrote to Jones on October 24, 1994, advising that if the previously requested information was not received within ten days, they would initiate a third-party action against Stimson and proceed to depose Stimson personnel and subpoena production of the requested information. On October 26, 1994, Jones forwarded this letter directly to the human resource manager at Stimson's Bonner mill, requesting that the manager contact him to discuss how to proceed.

¶ On December 8, 1994, counsel for the Olivers filed a petition pursuant to Rule 27, M.R.Civ.P., to obtain prelitigation discovery with respect to the Olivers' potential third-party claims. Upon deposing Stimson personnel in March 1995 pursuant to a court order, counsel for the Olivers learned that the equipment involved in Mr. Oliver's injury had been completely

rewired and the programmable logic controller as well as other components had been replaced and discarded over Labor Day weekend in September 1994.

¶ As a result of this discovery, the Olivers filed a complaint against Stimson on July 17, 1996, for intentional and negligent spoliation of evidence and to void any subrogation rights Stimson might have. The Olivers later amended their complaint to include Liberty Northwest as a Defendant. After a period of discovery, the parties moved for summary judgment.

¶ Following two separate hearings on the motions, the District Court entered an opinion and order granting the Defendants' motions for summary judgment on all claims. In its opinion, the District Court determined that the Defendants' conduct, under any interpretation, simply could not support a claim for intentional spoliation of evidence. The court further concluded that it need not reach the question of whether to recognize the tort of negligent spoliation since the Olivers were unable to develop a factual basis to establish any duty on the part of the Defendants to preserve the equipment.

¶ The Olivers appeal from the District Court's decision.

STANDARD OF REVIEW

¶ Our standard of review in appeals from summary judgment rulings is de novo. See Motaire v. Northern Mont. Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. See Bruner v. Yellowstone County (1995), 272 Mont.

261, 264, 900 P.2d 901, 903. In Bruner, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

¶ At the outset, it is important to note that this is an appeal from a grant of summary judgment in favor of the Defendants. In a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment. See Joyce v. Garnaas, 1999 MT 170, ¶ 8, 983 P.2d 369, ¶ 8, 56 St.Rep. 661, ¶ 8. Consequently, we will view the evidence in the light most favorable to the Olivers and all reasonable inferences will be drawn in their favor.

ISSUE 1

¶ Did the District Court err when it concluded that the exclusive remedy provisions of the Workers' Compensation Act barred the Olivers from bringing a claim for spoliation of evidence against Mr. Oliver's employer?

¶ As a threshold matter we shall address the District Court's decision that the Olivers' negligence claims are barred by the exclusivity provisions of the Workers' Compensation Act

(Act). The District Court concluded that since the Olivers could not show that any of the Defendants deliberately destroyed evidence to prevent the Olivers from pursuing a third-party claim, the Olivers were barred by the exclusivity provisions of the Act from bringing a negligence action against Mr. Oliver's employer and/or his employer's workers' compensation insurance carrier. Stimson sides with the District Court in its conclusion that the Act bars the Olivers' claim against it. The Olivers assert that a cause of action for spoliation of evidence is an interference with a property interest rather than a personal injury, which falls outside the exclusivity provisions of the Act. We agree with the Olivers.

¶ The applicable provision of the Act provides:

For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. . . . an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death.

Section 39-71-411, MCA (1993) (emphasis added). We have previously stated the rationale for the adoption of workers' compensation legislation was to "guarantee workers with work-related injuries some form of compensation in exchange for relinquishing any potential tort claims against their employers." Stratemeyer v. Lincoln County (1996), 276 Mont. 67, 74, 915 P.2d 175,

179. This quid pro quo between employers and employees is central to the Act and it is axiomatic that the employee have some possibility of recovery for the compromise to hold. Stratemeyer, 276 Mont. at 75, 915 P.2d at 179.

¶ A compensable injury under the Act is defined as follows:

(1) "Injury" or "injured" means:

(a) internal or external physical harm to the body;

. . . .

(c) death.

(2) An injury is caused by an accident. An accident is:

(a) an unexpected traumatic incident or unusual strain;

(b) identifiable by time and place of occurrence;

(c) identifiable by member or part of the body affected; and

(d) caused by a specific event on a single day or during a single work shift.

Section 39-71-119, MCA (1993). Thus, injuries that trigger an exclusive remedy under the Act are internal or external harm to a worker's body. The loss or impairment of a person's ability to bring an action against a third party for spoliation of evidence is not an injury covered by the Act. Accordingly, we hold that an employee's claim against his employer for spoliation of evidence is not barred by the Act's exclusivity provisions. Therefore, we conclude that the District Court erred when it determined that the Olivers were barred by the exclusivity provisions of the Workers' Compensation Act from bringing a negligence action against Mr. Oliver's employer and/or his employer's workers' compensation insurance carrier.

ISSUE 2

¶ Should Montana adopt the torts of negligent and intentional spoliation of evidence as independent causes of action?

¶ As previously stated, the District Court concluded that it need not reach the question of whether the torts of intentional or negligent spoliation of evidence should be recognized in Montana. The District Court held that the Defendants did not engage in the type of conduct that could give rise to intentional spoliation of evidence. The court further concluded that given the relationship of the parties, there was no duty on the part of the Defendants to preserve the evidence, thus any negligence action would fail under any circumstances.

¶ Nonetheless, the Olivers urge this Court to adopt the torts of negligent and intentional spoliation of evidence. Stimson contends that we need not decide whether to recognize either tort because the Olivers could not prove such a claim. As for Liberty Northwest, it asserts that the Olivers' complaint fails to state a claim against it upon which relief could be granted.

¶ This is a case of first impression in Montana. However, we have previously upheld an award of exemplary damages against an owner of a vehicle who had destroyed critical physical evidence at the scene of an accident. This destruction of evidence resulted in the inability of the officer to conduct visibility and illumination tests as part of his investigation and determination of fault. In that situation, we stated that an identifiable basis for actual damages exists, which arises from the plaintiff's deprivation of the illumination tests. See Lauman v. Lee (1981), 192 Mont. 84, 89, 626 P.2d 830, 833.

¶ Relevant evidence is critical to the search for the truth. The intentional or negligent destruction or spoliation of evidence cannot be condoned and threatens the very integrity of our judicial system. There can be no truth, fairness, or justice in a civil action where relevant evidence has been destroyed before trial. Historically, our judicial system has fostered methods and safeguards to insure that relevant evidence is preserved. Ultimately, the responsibility rests with both the trial and appellate courts to insure that the parties to the litigation have a fair opportunity to present their claims or defenses.

¶ Remedies already exist for parties to an action who have suffered a loss as a result of the spoliation of evidence by another party. See Cedars-Sinai Med. Ctr. v. Superior Court (Cal. 1998), 954 P.2d 511, 517-18; Stefan Rubin, Tort Reform: A Call for Florida to Scale Back its Independent Tort for the Spoliation of Evidence, 51 Fla. L. Rev. 345, 357-59 (1999); Montana Rules of Civil Procedure. We see no reason to recognize a new tort theory to provide relief to litigants when evidence is intentionally or negligently destroyed by a party to the litigation.

Trial judges are well equipped under the Montana Rules of Civil Procedure to address the problem as it occurs and deal with it accordingly, even entering default when the circumstances justify such relief.

¶ When evidence is in the possession of a third party, however, the various sanctions available to the trial judge are inapplicable and other considerations arise. For instance, the property in question may be owned by the third party. A property owner normally has the right to control and dispose of his property as he sees fit. The owner of the property may legitimately question what right a plaintiff has to direct control over such property. Yet, the importance of evidence preservation and the critical importance it plays in the civil justice system cannot be ignored.

¶ We are also mindful that some courts that have carefully considered this question have determined that there is no need to recognize the spoliation torts since existing remedies suffice. In the final analysis, however, we have concluded that it is necessary to recognize the tort of spoliation of evidence, which may be negligent or intentional, as an independent cause of action with respect to third parties who destroy evidence. In doing so, we are sensitive to the legitimate interests and rights of third parties who are in the possession of such evidence. Thus, we have attempted to craft a balanced remedy which will serve as a deterrent to any potential spoliator and provide suitable punishment against an actual spoliator as well as fair compensation to the victim of spoliation without creating a windfall.

¶ A brief survey of a few of the jurisdictions that have previously recognized the tort of

spoliation of evidence as an independent cause of action is relevant to our analysis. The California Court of Appeal for the Second District was the first court to adopt spoliation of evidence as an independent tort. See Smith v. Superior Court (Cal. Ct. App. 1984), 198 Cal. Rptr. 829, 837. In that case, the plaintiff was injured when a wheel and tire flew off an oncoming van and smashed into the windshield of her car. After the accident, the van had been towed for repairs to the dealership that had originally installed the van's customized wheels. The dealership agreed to maintain certain parts pending further investigation by plaintiff's counsel. However, some time thereafter, the dealership destroyed, lost, or transferred the physical evidence. See Smith, 198 Cal. Rptr. at 831. In determining whether to recognize a new tort for the intentional spoliation of evidence, the court focused on the evolving nature of tort law. Relying on the basic premise that "for every wrong there is a remedy," the court established the tort of intentional spoliation of evidence as an independent cause of action. See Smith, 198 Cal. Rptr. at 832. In doing so, the court acknowledged that the extent and amount of damages in a spoliation case are highly speculative. See Smith, 198 Cal. Rptr. at 835-36. Finally, the court analogized the new tort of spoliation to the tort of interference with prospective business advantage already recognized by the State of California. The court concluded that a prospective civil action is a valuable probable expectancy that public policy dictates the court must protect from interference even though damages cannot be stated with certainty. See Smith, 198 Cal. Rptr. at 836-37. In addition, the court referenced the California Supreme Court decision of Williams v. State of California (Cal. 1983), 664 P.2d 137, issued the previous year, which implied that a cause of action for negligent spoliation of evidence might be established if the spoliator were under a duty to preserve the

evidence. See Smith, 198 Cal. Rptr. at 833; see also Rubin, 51 Fla. L. Rev. at 349-50.

¶ Approximately six months later, the Florida District Court of Appeal for the Third District recognized negligent spoliation of evidence as an independent cause of action. See Bondu v. Gurvich (Fla. Dist. Ct. App. 1984), 473 So. 2d 1307, 1313. In that case, the plaintiff's husband died while under anesthesia administered during triple bypass surgery. The plaintiff subsequently sued the hospital and the anesthesiologists claiming, as part of her multi-count complaint, the hospital intentionally interfered with her right of action by purposely and intentionally losing and/or destroying the anesthesiology records associated with her husband's surgery, which frustrated her ability to prove her case. See Bondu, 473 So. 2d at 1309-10. Relying on the California decisions mentioned previously, the Florida court recognized that an action for negligent spoliation could only be maintained if the defendant owed a duty to the plaintiff to preserve the evidence. See Bondu, 473 So. 2d at 1312. Under Florida law, the hospital had both an administrative and statutory duty to preserve the anesthesiology records and provide them to the plaintiff upon her request. Based on the hospital's breach of this duty, which resulted in the loss of a medical negligence lawsuit, the court concluded that the plaintiff's complaint stated a cause of action. See Bondu, 473 So. 2d at 1312-13.

¶ In 1986 the Appellate Court of Illinois also considered whether to recognize the tort of spoliation of evidence. See Petrik v. Monarch Printing Corp. (Ill. App. Ct. 1986), 501 N.E.2d 1312. In that case, the court ultimately concluded that it need not decide whether Illinois law would recognize such a tort due to the fatal lack of an indispensable element of the tort: the

plaintiff failed to adequately plead a nexus between the failure of his suit and the destruction of evidence. See Petrik, 501 N.E.2d at 1321.

¶ In 1995 the Supreme Court of Illinois was presented with a certified question from a trial court, which assumed that Illinois courts had previously recognized spoliation of evidence as an independent cause of action. See Boyd v. Travelers Ins. Co. (Ill. 1995), 652 N.E.2d 267, 269. The supreme court pointed out that it had never done so, but in response to the posed question it held that an action for negligent spoliation could be stated under existing negligence law without creating a new tort. See Boyd, 652 N.E.2d at 269-70. The supreme court went on to state:

To state a cause of action for negligence, a plaintiff must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages.

The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute or another special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. In any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.

Boyd, 652 N.E.2d at 270-71 (citations omitted).

¶ Most recently, the United States Court of Appeals for the District of Columbia certified

questions involving the availability of a cause of action for spoliation of evidence and the causation standard to be applied to the tort, to the District of Columbia Court of Appeals. See Holmes v. Amerex Rent-A-Car (D.C. 1998), 710 A.2d 846, 847. In Holmes, the District of Columbia Court of Appeals held that negligent or reckless spoliation of evidence was an independent tort, set forth the elements of the tort, determined the standard for causation, and established an equitable system for calculating damages.

¶ After a review of the decisions in those jurisdictions that have recognized the tort of spoliation of evidence, we adopt the torts of both intentional and negligent spoliation. A brief description of the elements of the torts is appropriate because of the unique nature of the torts, especially with respect to causation and damages.

I. NEGLIGENT SPOLIATION OF EVIDENCE

¶ We agree with the states that have recognized the tort of negligent spoliation of evidence as an independent cause of action, which consists of the following elements:

(1) existence of a potential civil action;

(2) a legal or contractual duty to preserve evidence relevant to that action;

(3) destruction of that evidence;

(4) significant impairment of the ability to prove the potential civil action;

(5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;

(6) a significant possibility of success of the potential civil action if the evidence were available; and

(7) damages

See Holmes, 710 A.2d at 854; see also Rubin, 51 Fla. L. Rev. at 354-55. Generally, in order to prevail in a tort action, a plaintiff must show by a preponderance of evidence that the defendant breached a legal duty to the plaintiff and that the breach was the cause of the plaintiff's damages. See Gentry v. Douglas Hereford Ranch, Inc., 1998 MT 182, ¶ 24, 290 Mont. 126, ¶ 24, 962 P.2d 1205, ¶ 24.

A. Duty

¶ A duty to preserve evidence may arise in relation to a third-party spoliator where:

(1) the spoliator voluntarily undertakes to preserve the evidence and a person reasonably relies on it to his detriment;

(2) the spoliator entered into an agreement to preserve the evidence;

(3) there has been a specific request to the spoliator to preserve the evidence; or

(4) there is a duty to do so based upon a contract, statute, regulation, or some other special circumstance/relationship.

See Johnson v. United Servs. Auto. Ass'n (Cal. Ct. App. 1998), 79 Cal. Rptr. 2d 234, 239-41.

¶ Here, the Olivers claim that a duty to preserve the equipment was established by virtue of their specific request to retain the machinery. The Defendants aptly point out that in order to trigger such a duty under the Johnson requirements, the request must be accompanied by an offer to pay the reasonable costs of preservation. See Johnson, 79 Cal. Rptr. 2d at 240.

¶ Here, we deviate to some extent from the elements set forth in Johnson. We see no need to require the requesting party to include an offer to pay reasonable costs of preservation in the request. In many instances, particularly where the evidence is small in size and manageable, there will be no costs associated with the preservation. However, after receiving such a request, the third party may demand the reasonable costs of preservation from the requesting party. Of course, the person requesting preservation would have the option of deciding whether or not to incur such costs. This condition places the burden of preservation where it rightfully belongs, on the person or entity requesting preservation.

¶ In the present case, giving the Olivers the benefit of all favorable inferences, there are material facts in dispute with regard to whether Stimson received the request to preserve the evidence. Loren Hartman, the claims adjuster for Liberty Northwest, testified that his usual and

customary procedure was to telefax copies of important letters, such as the May 24, 1994, request to preserve letter from the Olivers' attorney, to Stimson. He stated he had no reason to believe that he did not follow the custom in this instance. Furthermore, Mr. Jones, who considered himself the attorney for both Liberty Northwest and Stimson, testified that he participated in a telephone conference call which included key Stimson employees, wherein he discussed the letter point by point.

¶ Given this testimony, we conclude that a jury may very well determine that Stimson had actual notice of the Olivers' request to preserve the evidence. Therefore, the District Court erred in awarding summary judgment to Stimson on the issue of duty.

B. Causation

¶ After thorough review of the authorities from other jurisdictions, we agree with the District of Columbia Court of Appeal's determination of causation in Holmes v. Amerex Rent-a-Car. A third-party spoliator should not be forced to pay damages to a plaintiff who had only a frivolous underlying claim. Thus, some threshold showing of causation and damages is required. See Holmes, 710 A.2d at 850.

¶ Recovery for the loss of a plaintiff's ability to prove the underlying case and a third party's interest in only compensating the plaintiff for the third party's harmful conduct must be balanced in determining the standard of proof for causation in an independent cause of action for negligent or intentional spoliation of evidence. Balancing of such interests requires the plaintiff to show a nexus between the destroyed evidence and the impairment of proving the underlying suit.

¶ While we agree that bringing an action for the underlying tort with the action for spoliation would be the most efficient approach, to require a plaintiff to either pursue and lose the underlying claim or demonstrate that the underlying claim is precluded is too harsh. Requiring plaintiffs to pursue futile lawsuits or to withhold relief from plaintiffs whose lawsuits have been severely hampered, but not precluded, by spoliation of evidence ignores the plaintiffs' interest in securing a reasonable recovery for a lost or impaired expectancy. Therefore, we hold that in order to prove causation, a plaintiff must show that: (1) the underlying claim was significantly impaired due to the spoliation of evidence; (2) a causal relationship exists between the projected failure of success in the underlying action and the unavailability of the destroyed evidence; and (3) the underlying action would enjoy a significant possibility of success if the spoliated evidence still existed. See Holmes, 710 A.2d at 851-52.

¶ With respect to the third prong of causation, the standard of "significant possibility of success," is lower than the standard of "preponderance of the evidence." As such, a plaintiff must demonstrate a substantial and realistic possibility of succeeding, but need not demonstrate that such success was more likely than not. See Holmes, 710 A.2d at 852.

C. Damages

¶ Generally, a plaintiff is required to prove damages with reasonable certainty. See Smith v. Zepp (1977), 173 Mont. 358, 370, 567 P.2d 923, 930. However, we have previously stated that when there is strong evidence of the fact of damage, a defendant should not escape liability because the amount of damage cannot be proven with precision. See Johnson v. Murray (1982), 201 Mont. 495, 506, 656 P.2d 170, 175 (citation omitted). In this regard, the United

States Supreme Court noted early on that the speculative nature of damages should not bar recovery:

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his act.

Story Parchment Co. v. Paterson Parchment Paper (1931), 282 U.S. 555, 563, 51 S. Ct. 248, 250, 75 L. Ed. 544, 548.

¶ The speculative nature of damages is inherent in the uncertainties of proof relevant to the tort of spoliation of evidence. Thus, the interest of the plaintiff to recover the entire amount of damages that he would have received if the underlying action had been pursued successfully must be balanced with the defendant's interest in not providing the plaintiff with a windfall. The plaintiff should not be allowed to benefit more from the spoliation than he would have in the underlying suit. On the other hand, the defendant should be adequately punished for his offending conduct and should be required to adequately compensate the plaintiff for the loss of his ability to pursue the underlying suit. See Holmes, 710 A.2d at 853.

¶ In taking these interests into consideration, it is necessary for the damages to be discounted to account for the uncertainties. Therefore, we hold that damages arrived at through reasonable estimation based on relevant data should be multiplied by the significant possibility that the plaintiff would have won the underlying suit had the spoliated evidence been available. For example, if a

jury determined that the expected recovery in the underlying suit was $200,000 and that there was an estimated 60 percent possibility that the plaintiff would have recovered that amount in the underlying suit had it not been impaired by the spoliated evidence, then the award of damages would be $120,000 (60 percent of $200,000). See Holmes, 710 A.2d at 853-54.

## II. INTENTIONAL SPOLIATION OF EVIDENCE

¶ The District Court concluded that it did not need to reach the question of whether to recognize a claim for intentional spoliation of evidence in Montana. The reasoning employed by the District Court was that the intent of the spoliator goes to whether the intentional acts of the spoliator were designed to disrupt the plaintiff's case. The District Court pointed out that the Olivers had not shown any facts that would support the conclusion that Stimson had destroyed the evidence for the purpose of disrupting the Olivers' third-party suit.

¶ The intentional destruction of evidence to disrupt or defeat another person's right of recovery is highly improper and cannot be justified. See Coleman v. Eddy Potash, Inc. (N.M. 1995), 905 P.2d 185, 189. Thus, we would be willing to recognize the tort of intentional spoliation of evidence if such a case so warranted it. However, this is not such a case. The District Court correctly determined that the Olivers had not presented any facts that indicated either Defendant had destroyed evidence for the purpose of disrupting their third-party suit. Accordingly, we affirm the District Court's award of summary judgment in favor of the Defendants with regard to the Olivers' claim of intentional spoliation of evidence.

¶ Nonetheless, we agree with the courts and commentators that intentional spoliation of evidence consists of the following elements:

(1) the existence of a potential lawsuit;

(2) the defendant's knowledge of the potential lawsuit;

(3) the intentional destruction of evidence designed to disrupt or defeat the potential lawsuit;

(4) disruption of the potential lawsuit;

(5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and

(6) damages

See Coleman, 905 P.2d at 189 (citing Philip A. Lionberger, Interference with Prospective

Civil Litigation by Spoliation of Evidence: Should Texas Adopt a New Tort?, 21 St. Mary's

L.J. 209, 222 (1989); Smith v. Howard Johnson, 615 N.E.2d at 1038); see also Steffen Nolte,

The Spoliation Tort: An Approach to Underlying Principles, 26 St. Mary's L.J. 351, 361-62.

¶ The elements with regard to causation and damages for intentional spoliation of evidence are

the same as those for negligent spoliation of evidence. A plaintiff bringing a claim for intentional

spoliation of evidence is still required to prove a causal relationship between the act of spoliation

and the inability to prove the lawsuit and damages. Therefore, we conclude that the standard of

proof required for causation and the methodology for determining damages is the same for both

negligent and intentional spoliation of evidence.

ISSUE 3

¶ Did the District Court err in awarding summary judgment in favor of Liberty Northwest

Corporation?

¶ The Olivers allege that the agency relationship between Stimson and Liberty Northwest

results in both Stimson and Liberty Northwest being responsible to the Olivers for spoliation of

evidence. Liberty Northwest counters by pointing out that the Olivers' Second Amended

Complaint contains four separate causes of action, none of which contains any allegation of

wrongdoing on the part of Liberty Northwest. As a result, the District Court granted summary

judgment in favor of Liberty Northwest.

¶ The Olivers stated the following purported basis for their claim against Liberty Northwest:
In recent depositions and in pleadings, Stimson contends that certain correspondence from the

Plaintiffs' attorney, specifically Exhibit B, the May~24 correspondence from Plaintiffs' attorneys to

. . . the attorney for Stimson, was never received by Stimson, even though it was received by [the

attorney] and Liberty Northwest. Therefore, since the tort of spoliation in the context of a

third-party claim emanating from a workers' compensation claim is undecided in Montana, the

status of Liberty Northwest and the potential independent culpability of Liberty Northwest

necessitates that Liberty Northwest be brought in as a party to this litigation for determination of

the culpability, if any, in the Plaintiffs' litigation seeking redress for Stimson's spoliation of evidence.

In this regard, the District Court stated that the Olivers' claims against Liberty Northwest were at a

minimum dependent upon the success of the Olivers' claims against Stimson and proof that Liberty Northwest's agents were also acting as actual or ostensible agents for Stimson as it relates to shuffling correspondence between the Olivers' counsel, Liberty Northwest's actual agents, and Stimson's actual agents during the days following Mr. Oliver's accident.

¶ It is the burden of the plaintiff to adequately plead a cause of action. See Ryan v. City of Bozeman (1996), 279 Mont. 507, 512, 928 P.2d 228, 231. In addition, we have stated that a complaint is sufficient if it concisely states facts upon which relief can be granted upon any legally sustainable basis. However, with this premise in mind, we emphasized that:

[A] complaint must state something more than facts which, at the most, would breed only a suspicion that plaintiffs have a right to relief. Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief.

Ryan, 279 Mont. at 512, 928 P.2d at 231 (citation omitted).

¶ With regard to Liberty Northwest, the Olivers have failed to meet their burden. The Olivers have failed to concisely state facts upon which relief could be granted in relation to their claims for spoliation of evidence against Liberty Northwest. Therefore, we conclude that the District Court did not err in granting summary judgment in favor of Liberty Northwest.

¶ Accordingly, we affirm in part and reverse in part the decision of the District Court. We affirm the District Court's grant of summary judgment in favor of Liberty Northwest and the District Court's grant of summary judgment in favor of the Defendants with regard to the Olivers'

claim for intentional spoliation of evidence. We reverse the District Court's conclusion that the exclusivity provisions of the Montana Workers' Compensation Act bar the Olivers' claims against Mr. Oliver's employer for spoliation of evidence and the District Court's grant of summary judgment in favor Stimson with regard to the Olivers' claim for negligent spoliation of evidence. In light of our decision to recognize the tort of negligent spoliation of evidence as an independent cause of action against third parties who destroy evidence, we remand this cause to the District Court for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, concurring in part and dissenting in part.

¶ I concur in the Court's opinion on issues one and three and in that portion of the opinion on issue two which generally adopts the tort of negligent spoliation of evidence by a third party. I dissent from the duty element of that tort as defined by the Court and from the application of that duty in this case. Finally, I dissent from the Court's definition of the tort of intentional spoliation of evidence by a third party. I would affirm the District Court on issue two.

¶ In large part, the Court adopts the Johnson approach to when a duty to preserve evidence may arise in relation to an alleged third-party spoliator. It departs from that approach, however, in one particular. I would not do so.

¶ In Johnson, the California Court of Appeals defined the "specific request" duty basis as a specific request to preserve "accompanied by an offer to pay the cost or otherwise bear the burden of preserving." Johnson, 79 Cal. Rptr. 2d at 241. As that court observed, "[w]e do not think a tort duty to preserve should be created simply by someone specifically requesting a third party to preserve something. Preservation may entail significant burdens." Johnson, 79 Cal. Rptr. 2d at 241 (citation omitted). I agree.

¶ I also agree with the California court that it is this added condition that "places the burden of preservation rightfully where it belongs--on the person or entity requesting preservation." See Johnson, 79 Cal. Rptr. 2d at 241. A simple request to a third party to preserve that party's property for what might be a significant period of time strikes me as an inadequate and unfair basis upon which to premise the existence of a legal duty. Indeed, I am aware of no other court which has imposed a legal duty on a third party to preserve its property for another's benefit on the basis

of a mere request. I would adopt the "specific request accompanied by an offer to pay" basis for the existence of a duty to preserve set forth by the Johnson court, apply it here, and conclude that--since no offer to pay was made--no duty to preserve arose.

¶ Instead of doing so, the Court states that there is no need to require the requesting party to include the offer to pay in the request because, in many instances, there will be no costs associated with the preservation. So, it places the obligation with regard to the subject of payment of costs on the alleged spoliator, by allowing the spoliator to demand the payment of costs associated with the preservation after a duty to preserve has come into existence. But the question is not whether, or to what extent, there will be costs for preserving the property. The question is where the obligation with regard to payment--and raising the payment issue--properly belongs. If there are no associated costs, the requesting party ultimately will pay no costs whether or not the obligation to offer to pay is a required part of the basis for the existence of the duty to preserve. The point, though, is that the obligation to offer to pay before a legal duty arises seems to me to be the proper balance and it, rather than the approach adopted by the Court, places the burden where it properly belongs--on the party making the request. See Johnson, 79 Cal. Rptr. 2d at 241.

¶ The upshot of the Court's approach to duty, of course, results in this case going forward on the basis that Stimson had a duty to preserve evidence--assuming the notice issue is resolved in the Olivers' favor--on the basis of the Olivers' mere request that it do so, notwithstanding that Stimson has forever lost the right to demand payment of the reasonable costs of preservation. This is simply not fair to Stimson and, indeed, it significantly undermines the Court's statement that

appellate courts must insure that the "parties" to litigation have a fair opportunity to present their claims or defenses. It is true that the Olivers now have a fair opportunity to present their claim. Stimson does not have a corresponding opportunity. Had Stimson had the opportunity to demand the reasonable costs of preservation--an opportunity on which the Court places much importance--it may be that the Olivers would have declined to incur such costs and this action never would have been filed. The fact is that, at least in this case, the Court's placing of the burden of preservation "where it rightfully belongs, on the person or entity requesting preservation[,]" is an illusion.

¶ Finally, I would not define the elements of the tort of intentional spoliation of evidence in the case presently before us. The Court properly notes that this case does not warrant the adoption or recognition of such a tort due to the total absence of any facts which would support such a cause of action. For the Court to then define the elements of an as yet unrecognized and unadopted tort results in an advisory opinion on a subject admittedly not before us. That portion of the Court's opinion is purely and totally dicta and, for that reason, I cannot join it.

¶ I join the Court in reversing the District Court on issue one and affirming it on issue three. I dissent from the Court's reversal of the District Court on issue two.

/S/ KARLA M. GRAY