No. 01-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 20N

KENNETH J. RAY

Plaintiff/Appellant,

v.

DOLLY STEWART, ROBERT

KELLY a/k/a BOB KELLY and

FLYNT INGERSOL,

Defendant/Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Raymond P. Tipp, Anthony L. Silvestri, Tipp & Buley, Missoula, Montana

For Respondent:

Kevin S. Jones, Christian, Samson & Jones, Missoula, Montana

Submitted on Briefs: September 6, 2001
Decided: February 1, 2002

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by his Court.

¶2 On August 6, 1998, Kenneth Ray (Ray) brought an action for recovery of possession of a motor home, alleging that Robert Kelly (Kelly) and Flynt Ingersol (Ingersol) had wrongfully converted his motor home, and that Dolly Stewart (Stewart), a motor vehicle dealer, had wrongfully and fraudulently obtained a certificate of title to the motor home. Eventually, Stewart filed a Motion for Summary Judgment. Following oral argument, the District Court issued its Findings of Fact, Conclusions of Law, and Order, granting Stewart summary judgment.

¶3 The sole issue presented is whether the District Court erred in granting summary judgment in favor of Stewart.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Ray originally purchased the motor home at issue in 1995. It was titled in Nevada and financed under a security agreement with Chrysler Credit Corporation. Kelly and Ingersol used the motor home periodically with Ray's permission. In the Summer of 1997, Ray left the vehicle with Ingersol. However, when Ray returned to Las Vegas, Ingersol, Kelly, and the motor home were gone.

¶4 In September of 1997, Kelly sold the motor home to Stewart for valuable consideration, including a trade of a smaller motor home. At the time of the sale, Kelly presented Stewart with a notarized and signed vehicle title and bill of sale for the motor home; purportedly signed by Ray on July 22, 1997. In January of 1998, Stewart called Ray to ask about the status of the vehicle's title in terms of the lien against it and talked to Ray's son, who informed Stewart that the motor home may be stolen. Stewart retained possession of the motor home and processed the motor home title through the Montana Department of Motor Vehicles and obtained title for the vehicle in February of 1998.

¶5 On August 6, 1998, Ray filed this action to recover his motor home. Ray alleged the following claims: (1) Kelly and Ingersol wrongfully converted Ray's motor home; (2) Ingersol, Kelly and Stewart conspired to defraud Ray of the motor home; (3) Stewart wrongfully and fraudulently obtained a certificate of title to the motor home; and (4) Stewart submitted a forged and altered certificate of title, knowing it was forged. On September 8, 1998, Stewart filed an Answer and Cross-claim against Ingersol and Kelly.

¶6 After receiving some independent verification that the motor home was in fact stolen from Ray (i.e., a police report), Stewart voluntarily returned the vehicle, and then filed an Offer of Judgment, offering to allow judgment against her in favor of Ray for the return of the motor home. Ray did not accept this offer. Stewart later obtained an affidavit from the notary in Nevada who witnessed the bill of sale who averred that Ray had signed it. Stewart then filed a Counterclaim, alleging Ray had transferred title to the motor home to Kelly, and that she was entitled to either the return of the vehicle, or judgment in favor of Stewart against Ray for damages proven at trial.

¶7 Eventually Stewart filed a Motion for Summary Judgment on Ray's complaint. She argued there was no factual dispute between the parties as to whether Kelly had legally transferred the motor home to Stewart for valuable consideration, and whether Stewart returned the vehicle to Ray. Stewart included an affidavit from the notary who allegedly witnessed the transfer from Ray to Kelly, as well as an affidavit from Stewart. In Ray's response to the motion for summary judgment, he asserted that the signature on the bill of sale was not his and that he was not in Nevada at the time it was signed.

¶8 Following oral argument, the District Court entered its Findings of Fact, Conclusions of Law, and Order on January 19, 2001. The District Court granted summary judgment to Stewart on Ray's complaint and also dismissed Stewart's counterclaim, since "legal title to

the motor home probably rests with [Ray]." On January 26, 2001, the District Court dismissed the case entirely based upon its Findings of Fact, Conclusions of Law, and Order. Kelly had never been served with the complaint and it is not clear why the case was dismissed as to Ingersol. Ray appeals the District Court's order granting summary judgment to Stewart. We affirm.

## STANDARD OF REVIEW

¶9 We review appeals from summary judgment rulings *de novo*. *Sleath v. West Mont Home Health Services*, 2000 MT 381, ¶ 19, 304 Mont. 1, ¶ 19, 16 P.3d 1042, ¶ 19 (citation omitted). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Sleath*, ¶ 19 (citation omitted). We set forth our inquiry as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Sleath*, ¶ 19 (citing *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21).

## DISCUSSION

### ¶10 Did the District Court err in granting summary judgment in favor of Stewart?

¶11 In its Findings of Fact, the District Court found that when Stewart purchased the motor home from Kelly in 1997, she received a notarized bill of sale for the vehicle. The court also found that while she possessed the motor home, Stewart received some information suggesting that Kelly did not legally own the vehicle when he sold it. Although the court found that Stewart then proceeded to obtain a new title to the motor home in her name, it also found Stewart voluntarily returned the motor home to Ray once she received verification that the vehicle may still lawfully belong to Ray. The District Court further found that there was no evidence that Ray placed either title to or possession of the motor home with Kelly. Based on these findings, the court concluded legal title of

the motor home rested with Ray, but also determined Stewart lawfully came into possession of the motor home, and that upon receiving information that the vehicle was stolen, she returned the vehicle to Ray.

¶12 Ray argues the District Court's entry of summary judgment was error since there were genuine issues of material fact relating to Stewart's duty of care as a motor vehicle dealer, her alleged unlawful act of processing the title with knowledge of the theft, and whether she had a right to rely on the notary seal and signatures on the bill of sale. Ray also contends the affidavits submitted by Stewart were defective under Rule 56(e), M.R.Civ.P., thus arguing the District Court erred in relying on them.

¶13 In response to Ray's claims concerning Stewart's duty of care, Stewart contends that Ray provides no authority for the proposition that Stewart was obligated to determine if the vehicle was stolen when she bought it, and adds that there is no special relationship between Ray and Stewart as would be required for establishing breach of the implied covenant of good faith and fair dealing in tort. Stewart notes that since Ray did not raise the issue of duty in the District Court, the issue is not properly before this Court. Stewart asserts she had the right to rely on the notary seal, and therefore was justified in assuming the bill of sale was properly executed.

¶14 As to Ray's argument that Stewart breached a duty of care, Ray raises this issue for the first time on appeal. This Court has consistently ruled that it will not review issues raised for the first time on appeal. *Timis v. Young*, 2001 MT 63, ¶ 8, 305 Mont. 18, ¶ 8, 22 P.3d 1122, ¶ 8 (citations omitted). Notwithstanding this procedural bar, Ray's contentions are not supported legally.

¶15 Ray argues that Stewart owed a duty as a car dealer to comply with three statutory provisions: § 28-1-201, MCA, which provides that "[e]very person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of his rights;" § 28-1-211, MCA, the implied covenant of good faith; and § 30-14-103, MCA (unfair trade practices). However, none of these statutes are applicable since no contractual relationship existed between Stewart and Ray at the time she purchased the motor home. Stewart did not "injure" or "infringe" upon Ray's rights, because she lawfully purchased and thus lawfully came into possession of the motor home. Ray argues that Stewart could not lawfully process the title of the motor home once she was aware the vehicle may be stolen. However, Stewart owed no duty to Ray to cease her regular business practice of titling the vehicles she lawfully purchased. Once Stewart lawfully

possessed the vehicle, she was authorized to process the title accordingly. Furthermore, once Stewart received convincing information that the motor home was stolen, she returned the vehicle to Ray.

¶16 Ray also argues that Stewart violated § 61-3-603, MCA, which provides for criminal penalties for a person who alters or forges a vehicle title. However, because this is a civil rather than criminal proceeding, the District Court correctly declined to consider this allegation during oral argument.

¶17 Stewart was a bona fide purchaser, and thus we agree with the District Court that Stewart lawfully came into possession of the motor home. In Montana, it is well established that a bona fide purchaser is:

> one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive of any adverse rights, claims, interest, or equities of others in and to the property sold.

*Luloff v. Blackburn* (1995), 274 Mont. 64, 69, 906 P.2d 189, 191 (citation omitted). Ray does not contest that Stewart paid valuable consideration for the motor home, and further, there is no evidence establishing that Stewart had any idea the motor home was stolen at the time she bought it from Kelly. Stewart was an innocent buyer who purchased the motor home for value.

¶19 Moreover, Stewart had the legal right to rely on the notary seal on the bill of sale presented to her. Montana recognizes that notarial acts from other jurisdictions have "the same effect under the law of this state as if performed by a notarial officer of this state if it is performed in another state" by a "notary public of that jurisdiction." Section 1-5-606(1)(a), MCA. "The signature and title of a person performing a notarial act are prima facie evidence that the signature is genuine and that the person holds the designated title." Section 1-5-604(4), MCA. Although Ray claims that the signature on the bill of sale was not his, Stewart had no reason to suspect the bill of sale was not authentic and duly executed at the time of the sale. Stewart had the right to rely on the notary's signature as verification of the bill of sale, and was therefore a bona fide purchaser.

¶20 Ray's final argument, that it was error for the District Court to rely on defective and

inadequate affidavits, is misplaced. In its findings and conclusions, the District Court did not rely on the affidavits. Notably, the court concluded that proper legal title to the motor home rests with Ray ("there is no evidence that [Ray] placed either title to or possession of the motor home with [Kelly]"), which is contrary to the notary's averments that Ray transferred title to Kelly.

¶21 Moreover, whether the bill of sale was forged is irrelevant to Ray's claims against Stewart. Stewart was entitled to rely on the notarized bill of sale--whether it was fraudulently executed or not--therefore, the veracity of the signatures does not impact Ray's claims against Stewart. The bill of sale's authenticity is more relevant to Stewart's counterclaims that Ray in fact did transfer title to Kelly, thus supporting Stewart's counterclaim for her loss of consideration, including the trade-in, once she returned the vehicle to Ray. However, the District Court dismissed Stewart's counterclaim, and she does not appeal that ruling.

¶22 We conclude that Stewart was a bona fide purchaser for value who rightfully relied on the notary seal on the bill of sale, and that she therefore lawfully came into possession of the motor home. Therefore, the District Court did not err in granting summary judgment to Stewart and in dismissing both Ray's complaint and Stewart's counterclaim.

¶23 We affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ JIM RICE