JUSTICE WHEAT,
concurring.
¶84 I agree with the Court’s analysis and conclusions on the first issue. I also agree with the Court’s decision to reverse and remand to the District Court on the basis that BNSFs prejudicial arguments and questions deprived Anderson of a fair trial. I would, however, remand to the District Court with an instruction to enter default judgment on liability against BNSF. A new trial is insufficient to dissuade this particular litigant from its repeated attempts to prevail through misconduct rather than on the merits of its case.
¶85 We recently noted in Spotted Horse v. BNSF that the defendant here appears to have a pattern of practice that relies on misconduct to prevail in court. See Spotted Horse v. BNSF, 2015 MT 148, ¶¶ 22-27, 379 Mont. 314, 350 P.3d 52 (listing district court cases documenting discovery abuses and spoliation of evidence by BNSF). I note that Hedger Friend, PLLC, the law firm representing the BNSF here is the same firm (albeit a later iteration of the firm) that represented BNSF in the district court cases we cited to show a pattern and practice of misconduct. I also note that in one of those cases, the district court commented that it “repeatedly warned BNSF, through its common counsel, about its common pattern and practice of discovery in other FELA cases currently or recently pending.” Order Imposing Sanctions, Danielson v. BNSF, CDV-04-124(d) at 15 (Mont. Eighth Jud. Dist. Ct March 13,2006). Despite those warnings, BNSFs counsel continued to engage in conduct the district court characterized as “part of a larger recurring pattern and practice of dilatory and obstructive discovery practices.” Danielson at 25. The district court sanctioned BNSF for its misconduct by barring BNSF from presenting any evidence or argument contesting the plaintiffs proof of negligence in one case and granting default judgment as to liability in the other. Danielson at 25. ¶86 I also note that every time BNSF is called to account for its misconduct, it takes the same approach it took here, which is to treat each incidence of misconduct as though it occurred in isolation from all the others. A district court in Minnesota noted that tactic in an order granting over $4 million in sanctions against BNSF for multiple, flagrant instances of misconduct:
This Court is satisfied that the record, which has developed over a period of six years, overwhelmingly supports a finding that BNSF did, in fact, engage in conduct and decision making that compromised critical evidence, interfered with witnesses, impeded the investigation by law enforcement, and misled and/or *349 misrepresented a number of facts to Plaintiffs and this Court. BNSF has attempted to explain away this misconduct in piecemeal fashion by attributing much to inadvertence, coincidence, honest mistake, and/or legitimate business practices. This Court is simply not persuaded. Taken alone, some of BNSF’s abuses might not be sanctionable, and indeed might have been understandable given the complexities of this case. But the breadth of BNSFs misconduct in this case is staggering.
Order, Chase v. BNSF, No. C4-05-1607 (Minn. Tenth Jud. Dist. Ct, Oct. 15, 2009). The majority opinion here notes the same problem with BNSF’s tactic of treating each incidence of improper argument in isolation. Opinion, ¶ 78.1 submit that just as we refuse to view each improper comment in isolation from the others, so should we refuse to view this case in isolation from all the other documented cases in which this party has sought to prevail through misconduct. Although the misconduct documented in Spotted Horse, Danielson, and Chase primarily involved discovery abuses, misrepresentations, and evidence tampering, it is nonetheless relevant to the misconduct here because it shows a pattern of trying to win trials by misconduct, rather than merit.
¶87 As I noted in Spotted Horse, it is the obligation of evexy Montana corat to protect the integrity of the judicial system and to ensure proper administration of justice. Spotted Horse, ¶ 47 (Wheat, J., concurring) (citing Oliver v. Stimson Lumber Co., 1999 MT 328, ¶ 31, 297 Mont. 336, 993 P.2d 11). Where a party shows a repeated intent to flout the judicial system’s strong preference that cases be decided on their merits — and instead tries to win the case on the basis of how much misconduct it can get away with — that party forfeits the right to have its case decided on the merits, and default judgment on liability becomes the appropriate remedy. In this case, counsel for BNSF sought to prejudice the jury against the judicial system itself by characterizing it as a venue for dishonest plaintiffs and their accomplices to bilk businesses out of millions of dollars by making bogus clainxs:
But then $3,000,000? What kind of symptoms — it amazes me there’s a system where you can come in and ask for $3,000,000, because of an incident at work that you and I know is almost 100 percent Mr. Anderson’s fault.
So a careless person can come in, in a system, and ask for $3,000,000, for something that he caused?
¶88 We have an obligation to protect the judicial system by punishing its misuse and deterring future misuse. See Richardson v. State, 2006 *350 MT 43, ¶ 68, 331 Mont. 231, 130 P.3d 634; Schuff v. A.T. Klemens & Sons, 2000 MT 357, ¶ 81, 303 Mont. 274, 16 P.3d 1002; Oliver, ¶ 34. As the district court demonstrated in Danielson — nearly 10 years ago — this party and its counsel will continue to engage in misconduct until the sanctions become painful enough to deter them. Unless and until we become willing to grant the ultimate sanction of default judgment, we can expect to see more of the same. For that reason, I would instruct the District Court on remand to enter default judgment on liability against BNSF. No other remedy is sufficient to deter future abuses.