815 A.2d 508 (2003)
357 N.J. Super. 371
John J. SWICK, Jr., and Deborah Swick, his wife, Plaintiffs-Appellants,
v.
THE NEW YORK TIMES COMPANY, Defendant-Respondent, and
Nolan Products, Inc., Nolan Industries, Inc., Nolan Systems, Inc., Xyonicz Corporation, Cutler Hamer, Inc., and Eaton Corporation, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 2002.
Decided February 7, 2003.
*509 Richard E. Brennan argued the cause for appellant (Drinker Biddle & Shanley, attorneys; Mr. Brennan and Jennifer A. Klear, on the brief).
Dennis J. Drasco argued the cause for respondent (Lum, Danzis, Drasco, Positan & Kleinberg, attorneys for respondent The New York Times Company; Mr. Drasco and James D. Butler, of counsel; Kevin J. O'Connor, on the brief).
Before Judges WALLACE, JR., CIANCIA, and AXELRAD.
The opinion of the court was delivered by WALLACE, JR., J.A.D.
Plaintiff John Swick, Jr.[1] and his wife, Deborah Swick, appeal from a judgment of the Law Division dismissing their claim against defendant, The New York Times Company. We affirm.
The facts in this controversy are undisputed. On November 15, 1996, plaintiff seriously injured his left arm, hand, and fingers when he attempted to inspect and repair the newspaper conveyor system of his employer, The New York Times (The Times). Plaintiff filed suit against various defendants. In his amended complaint, plaintiff alleged that defendants Nolan Products, Inc., Nolan Industries, Inc., and Nolan Systems, Inc. (collectively Nolan), and defendant Cutler Hamer, Inc. (Cutler), were negligent in the design, manufacture, repair, maintenance, and inspection of the conveyor system which caused his injuries. Plaintiff further alleged that defendant Xyonicz Corporation merged with and is the successor-in-interest to Nolan and is responsible for the liabilities of Nolan, and that defendant Eaton Corporation is the successor-in-interest to Cutler and is responsible for the liabilities of Cutler.
Plaintiff was aware as early as April 1997 that the Times intended to dismantle the conveyor due to a plant closing. In preparation for filing a products liability action against Nolan and Xyonicz, plaintiff's attorney wrote the Times, beginning in April 1997, requesting that plaintiff be afforded an opportunity to inspect the equipment. After no reply was forthcoming, plaintiff's counsel wrote on July 11, 1997, that "we are continuing our request to inspect the machinery involved in the above referenced accident before it is dismantled and moved."
On August 5, 1997, plaintiff's attorney spoke with Vernon Byrd of the Times's legal department. Byrd advised counsel to make a written request regarding the preservation and inspection of the equipment. Plaintiff's attorney then sent a certified letter and facsimile requesting that the Times advise plaintiff "(i) whether the machine has been preserved, (ii) where it is located, (iii) when it is available for inspection, and (iv) to whom we should address our request to inspect the machine." Plaintiff's attorney followed up this request, but Byrd never arranged an inspection of the equipment.
On November 20, 1997, plaintiff filed a petition in New York against the New York Times seeking pre-lawsuit discovery. By letter dated January 15, 1998, the Times indicated it no longer possessed the subject conveyor and had sold it to the Manila Post Publishing Company in the Philippines. On January 16, 1998, the New York court ordered the Times to provide additional information about the conveyor, and on January 30, 1998, the Times informed plaintiff's counsel that the conveyor had been sold on September 17, 1997, and removed by the Manila Post in *510 the fall of 1997. The letter also listed the address of the buyer in the Philippines.
On October 23, 1998, plaintiff commenced this action in New Jersey against the manufacturers of the equipment and asserted claim of intentional and negligent spoliation of evidence against the Times, asserting that the Times had irreparably prejudiced his opportunity to prove a products liability action against the manufacturers because the conveyor had been sold. The Times filed an Answer denying liability while acknowledging that the conveyor had been sold in September 1997 and removed thereafter.
In April 2001, both parties moved for summary judgment on the spoliation claim. The court ordered a plenary hearing to determine if the Times had a duty to preserve the conveyor. Following a plenary hearing the court concluded that defendant had a duty to preserve the conveyor as of August 5, 1997, the date plaintiff's attorney wrote the Times requesting inspection of the conveyor. Following the denial of the Times's motion for leave to appeal, the matter was scheduled for trial.
Prior to trial, plaintiff dismissed his complaint against all defendants except the Times. On the first day of trial, the Times moved to dismiss the complaint on the ground that plaintiff could not prove damages since all the other defendants in the underlying products liability action had been dismissed. The manufacturer of the machine, Nolan, had declared bankruptcy in the 1980's and did not have any insurance, and other than the Times, the remaining defendants had been dismissed allegedly because plaintiff could not establish a case against them without the opportunity to inspect the conveyor.
The next day, the court dismissed plaintiff's complaint, concluding that plaintiff could not establish a prima facie case of spoliation. The court noted that the Supreme Court in Rosenblit v. Zimmerman, 166 N.J. 391, 766 A.2d 749 (2001), held that New Jersey does not recognize intentional spoliation as a separate cause of action but that a claim for fraudulent concealment could be maintained. Id. at 406, 766 A.2d 749. Further, the trial court noted that in Gilleski v. Community Medical Center, 336 N.J.Super. 646, 765 A.2d 1103 (App. Div.2001), the court held that a claim for negligent spoliation of evidence was not a separate cause of action, but a claim could be maintained under traditional concepts of negligence. Id. at 652, 765 A.2d 1103. The trial court then focused on the element of damages, stating that the case law on negligent and intentional spoliation:
seem[s] to indicate thatreally that the first determination ... has to be whether or not the plaintiff cancan prove damages against the defendant and if there is a finding of no cause in the products liability case, then the spoliation or the intentional ... concealment or negligence, case would then be brought to determine whether or not there would be a viable cause of action against the surviving defendant in this case. The problem I have here is that we can have no trial on the issue of whether or not the products liability case would result in a finding of no cause, or whether in fact there could be damages and I say that because all of the defendants in this case have been dismissed out, so there can be no trial of making that determination.
The court also noted that there was no remedy available to plaintiff since the traditional remedies available in spoliation cases, such as a negative inference against the spoliator or sanctions, were not applicable to the circumstances of this case. Consequently, the court entered judgment *511 in favor of the Times dismissing plaintiff's complaint.
On appeal, plaintiff contends:
POINT I:
THE TRIAL COURT ERRED PREJUDICIALLY IN DISMISSING PLAINTIFFS' COMPLAINT ON THE GROUND THAT PLAINTIFFS HAD TO FIRST PROCEED TO TRIAL AGAINST THE MANUFACTURER OF THE DEFECTIVE PRODUCT, AND ONLY AFTER JUDGMENT IN FAVOR OF THE MANUFACTURER COULD THEY THEN COMMENCE A SPOLIATION CLAIM AGAINST THE TIMES FOR FAILING TO PRESERVE THE CONVEYOR.
POINT II:
UNCERTAINTY AS TO THE AMOUNT OF DAMAGES IS NOT A BAR TO RECOVERY WHERE, AS HERE, THE DEFENDANT IS RESPONSIBLE FOR PLAINTIFFS' INABILITY TO PROCEED WITH A PRODUCTS LIABILITY ACTION.
We have carefully reviewed all of the arguments advanced by plaintiffs challenging the dismissal of the complaint, and we affirm substantially for the reasons expressed by Judge Hurley in his thoughtful and comprehensive oral opinion of January 3, 2002. We add only the following comments.
In Rosenblit, our Supreme Court held that New Jersey does not recognize a separate tort action for intentional spoliation of evidence. Rosenblit, supra, 166 N.J. at 404-05, 766 A.2d 749. Spoliation is a "term that is used to describe the hiding or destroying of litigation evidence." Id. at 400-01, 766 A.2d 749. The Court noted that various civil remedies were available where spoliation occurred. One such remedy is an inference during the underlying litigation whereby it is presumed "the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her." Id. at 402, 766 A.2d 749. A second remedy is a discovery sanction. Ibid. Thus, where a party fails to comply with a discovery request, "the court may order that designated facts be taken as established, refuse to permit the disobedient party to support or oppose designated claims or defenses, prohibit the introduction of designated matters into evidence, dismiss an action, or enter judgment by default [,][and] may order the delinquent party to pay reasonable expenses resulting from his or her conduct, including attorney's fees." Id. at 402-03, 766 A.2d 749. Another remedy is a separate tort action against the spoliator for intentional or negligent spoliation. Id. at 403, 766 A.2d 749. In this regard, the Court noted that New Jersey followed those jurisdictions which find that traditional negligence principles or an action for fraudulent concealment would suffice to address concealment or destruction during or in anticipation of litigation. Id. at 404-05, 766 A.2d 749. Since Rosenblit involved an allegation of intentional destruction of evidence, the Court set forth the elements required to prove an action for fraudulent concealment as follows:
(1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
(2) That the evidence was material to the litigation;
(3) That plaintiff could not reasonably have obtained access to the evidence from another source;
(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
(5) That plaintiff was damaged in the underlying action by having to rely on *512 an evidential record that did not contain the evidence defendant concealed.

[Id. at 406-07, 766 A.2d 749].
Prior to the Court's decision in Rosenblit, we reached a similar conclusion that spoliation of evidence was not a separate tort, but a claim for destruction of evidence against a third party could be brought by applying traditional negligence principles. Gilleski, supra, 336 N.J.Super. at 652, 765 A.2d 1103. In Gilleski, plaintiff was injured in a hospital when a chair collapsed. Within days of the accident, plaintiff's husband called the hospital complaining about the lack of adequate care for plaintiff, but he made no reference to the chair. Approximately fourteen months after the accident, plaintiff's attorney gave notice of a law suit but did not mention preservation of the chair. By that date, the hospital had already disposed of the chair. Plaintiff filed a negligence action against the hospital based on negligence in permitting her to use a defective chair and negligence in the destruction of the chair, which was critical evidence in a potential law suit against the chair manufacturer. The trial judge permitted the negligent spoliation claim to go to the jury, and the jury returned a verdict in favor of plaintiff. On appeal, we refused to recognize negligent spoliation of evidence as a separate tort and held that negligent destruction of evidence against a third party may be resolved by applying traditional negligence principles of a duty of care, breach of that duty by defendant, and an injury to plaintiff proximately caused by defendant's breach. Id. at 652, 765 A.2d 1103. We explained that a court could find a duty to preserve the evidence would exist if (1) the third party has knowledge of a potential lawsuit and accepts responsibility for preserving the evidence; (2) the third party voluntarily undertakes to preserve the evidence and a plaintiff reasonably and detrimentally relies thereon; (3) the third party agrees with plaintiff to preserve the evidence; or (4) plaintiff makes a specific request to the third party to preserve a particular item. Id. at 654-55, 765 A.2d 1103. In the application of these principles, we concluded the hospital owed plaintiff no duty because none of the standards for the imposition of a duty were prescribed. Id. at 655, 765 A.2d 1103.
Applying traditional negligence principles in the present case, neither party challenges the court's decision that the Times owed a duty to plaintiff to preserve the conveyor machine, so we need not address that issue. Assuming there was a duty and assuming the Times breached that duty, the crucial issue is whether plaintiff can demonstrate damages caused by that breach.
Before addressing that issue, we note that plaintiff failed to pursue a more traditional discovery sanction. The record shows that the Times sold the conveyor to a company in the Philippines and informed plaintiff of the location of the machine. Plaintiff could have asked the trial court to require the Times to pay for the cost for his expert to travel to the location of the machine and examine the machine as a reasonable expense resulting from the Times's conduct. See Rosenblit, supra, 166 N.J. at 403, 766 A.2d 749. Plaintiff did not pursue such a remedy and ultimately dismissed his complaint against the manufacturers and successor corporations.
We turn now to whether plaintiff presented any evidence of injury or damages proximately caused by the Times's alleged breach of a duty to preserve the equipment. As the trial court noted, plaintiff dismissed his complaint against all defendants except the Times. The proofs showed that Nolan, the manufacturer of the machine, was out of business, and there was no insurance coverage. Thus, *513 even if the machine had been available for plaintiff's expert to examine, and even if plaintiff obtained a judgment against Nolan, it was not disputed that plaintiff could not recover damages from Nolan. Under these circumstances, the evidence was clear that plaintiff could not prove that the Times's conduct in failing to preserve the machine proximately caused any injury to plaintiff. Consequently, judgment was properly entered in favor of the Times.
Affirmed.
NOTES
[1] Plaintiff in the singular refers to the injured plaintiff John Swick, Jr.