NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2925-19

27-35 JACKSON AVENUE, LLC,

      Plaintiff-Appellant,

v.

SAMSUNG FIRE & MARINE
INSURANCE COMPANY, LTD.,

      Defendant-Respondent.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **September 10, 2021** |
| **APPELLATE DIVISION** |

Submitted February 22, 2021 – Decided September 10, 2021

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey,
Law Division, Bergen County, L-6049-17.

Varcadipane & Pinnisi, PC, attorneys for appellant
(Jeffrey William Varcadipane and Samuel S. Saltman,
on the briefs).

Fleischner Potash, attorneys for respondent (James P.
Ricciardi, Jr., on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Plaintiff 27-35 Jackson Avenue LLC owned commercial property in Long Island City, New York. For no apparent reason, on January 8, 2015, a sprinkler head discharged water on the second floor of the premises that eventually damaged that floor and the one below. Plaintiff's principal tenant at the time was the United States General Services Administration (GSA), which, pursuant to a long-term lease, housed offices of the Department of Homeland Security at the property. Within days, GSA served written notice that it was terminating the lease because the premises were "untenantable." Plaintiff claimed to have lost millions of dollars in rent, including recoupment of the costs of improvements made to accommodate GSA's occupancy, because of the flood. It filed suit against the federal government in the United States Court of Federal Claims alleging breach of contract.[1]

Defendant Samsung Fire & Marine Insurance Co., Ltd., issued a commercial liability policy to plaintiff that was in effect at the time of the sprinkler mishap. Plaintiff secured the sprinkler head and made a claim under

---

[1] The Court of Federal Claims decision granted in part and denied in part the Government's motion to dismiss plaintiff's complaint. See 27-35 Jackson Ave LLC v. United States, No. 16-947C, 2017 U.S. Claims LEXIS 1204 (Fed. Cl. Sept. 28, 2017). We have no further information on any developments in that lawsuit.

A-2925-19

the policy.[2]  Defendant's subrogation counsel and claims adjuster engaged a professional engineer, Alan Fidellow, who inspected the premises and took possession of the sprinkler head.  On March 2, 2015, subrogation counsel advised defendant that based on Fidellow's analysis, "there [wa]s no third party available for subrogation."

Approximately three weeks later, plaintiff's counsel notified defendant in writing that it should preserve any items removed from the premises "in their original condition and that no destructive testing, or any other testing that would alter these items, be performed."  He advised that plaintiff intended to pursue any claims it might have "to recover for any portions of its loss not recoverable under the applicable insurance policies," and asked defendant "to preserve those items in their original condition for purposes of future litigation."

On May 20, 2015, defendant wrote plaintiff's counsel summarizing Fidellow's opinions and stating, "The failed sprinkler head was retained by our [a]djuster.  To date no destructive testing was warranted or completed on the sprinkler head."  In October, plaintiff's counsel wrote to defendant advising of the pending business interruption claim under the policy and requesting

---

[2]  Plaintiff subsequently filed a declaratory judgment suit against defendant seeking coverage for business interruption losses.  That suit settled.

A-2925-19

"access to the sprinkler head so that it may be examined by our expert." It was not until March 2016 that defendant's newly-assigned claims manager responded, writing that defendant did "not have in its possession any property that may have been taken from this risk" and specifically did not have the sprinkler head.

Plaintiff filed this complaint, alleging defendant intentionally or negligently lost or destroyed the sprinkler head, and plaintiff suffered damages as a result. Defendant filed its answer and discovery ensued, after which defendant moved for summary judgment. Plaintiff opposed the motion and cross-moved seeking "an [a]dverse [i]nference based on [d]efendant's spoliation of evidence."

After hearing oral argument, the Law Division judge reserved decision. She subsequently issued a written opinion in support of her order granting defendant's motion and dismissing plaintiff's complaint with prejudice. The judge subsequently denied plaintiff's motion for reconsideration, and this appeal followed.

I.

When reviewing the grant of summary judgment, we limit our review to the record before the motion judge, Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000), and apply the same standard that she did. Globe Motor Co.

v. Igdalev, 225 N.J. 469, 479 (2016). That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). We owe no deference to the motion judge's legal analysis and "review issues of law de novo." The Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)). Relevant to this appeal is recognition that "[t]he practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

## A.

The motion record additionally reveals that after inspecting the sprinkler head, Fidellow eliminated the possibility that the discharge resulted from a fire or "freeze up." He noted that the building manager had not reported any ceiling stains in the area nor accidental impact injuries to the sprinkler head. Fidellow attributed some discoloration of the sprinkler head to its age, but he

5

removed the heads of nearby sprinklers, and they did not exhibit similar discoloration. He said that "the pipe dope[3] on the threads that were visible appeared to have aged more than other areas which could mean that the head had been existing or been reused."

Fidellow contacted the manufacturer which had discontinued the product in 2013; there had been no reported recalls. He concluded in a February 28, 2015 email:

> When the head discharges the guts of the head are pushed out with the water release. Inspection of the head did not show any distortion and therefore there is nothing that can be determined from the head.
>
> Without any physical evidence we can only surmise that there was some weakness in the internal elements of the head that eventually let loose allowing the water to discharge. There is no way however of proving this. The inspection reports of the sprinkler system would not be able to locate this type of failure.

When deposed, Fidellow said he "got rid of" the sprinkler head "a little bit later" but did not know the exact date. He had the head "for a couple of days . . . maybe [until the] beginning of March [2015] . . . when [he was] told to close the case." Fidellow had no protocol for preserving evidence, nor was he was ever notified that "there was an obligation to preserve this evidence."

---

[3] "Pipe dope" is a solvent-based adhesive that provides a seal between the sprinkler head and the sprinkler system.

A-2925-19

Defendant's former claims manager testified at deposition that she received plaintiff's counsel's March 2015 letter requesting preservation of the sprinkler head and knew it was with Fidellow. She did not know he had discarded it or when.

Plaintiff retained Klas Haglid, P.E., who rendered his opinions "to a reasonable degree of engineering certainty." Haglid criticized Fidellow's inspection and opinion, noting he "did not consider corrosion." Haglid concluded it was "[m]ore likely than not" the potential cause of the sprinkler head's failure was a manufacturing defect, improper installation, or improper maintenance. However, "without the . . . sprinkler for inspection," he was unable to determine the exact cause.

During his deposition, Haglid testified that Fidellow could have performed further evaluations on the sprinkler head, including a "chemical analysis, analysis of rust or debris, spectral analysis of the metallurgy and chemicals left on what would be left of the valve body." Although Haglid would not speculate that these would have led to a specific conclusion, he affirmed "that if [he] had the [sprinkler] valve body and [he] did some of these

7

analyses[, he] would more likely than not reach a conclusion as to what caused it to discharge."[4]

B.

We focus only on issues that arose during argument on the motion and plaintiff's cross-motion that are germane to the appeal. Defendant argued plaintiff was "unable to make out the proximate cause link that's necessary between [defendant's] conduct and [plaintiff's] supposed inability to prove what would have been viable claims against third parties."[5] Plaintiff argued that even though the target of its potential lawsuit was a third-party and not defendant, a "negative inference" was appropriate based on defendant's failure to preserve the evidence. Plaintiff further contended that it had established defendant's spoliation of the sprinkler head proximately caused its inability to pursue a culpable third-party and recoup its losses not covered by defendant's policy.

---

[4] Plaintiff also retained an attorney who opined that based on Haglid's opinion, the failure to preserve the sprinkler head resulted in plaintiff's inability to pursue "one or more parties who were responsible for the failure." In the attorney's opinion, defendant's failure to preserve the evidence was "a proximate cause of [plaintiff] losing the ability to bring viable legal claims."

[5] Defense counsel specifically told the judge that defendant was not "moving on [defendant's] legal obligation" to have preserved the sprinkler head. Plaintiff conceded that the first count of its complaint, alleging intentional loss or destruction of evidence, should be dismissed.

8

In addressing count two of the complaint alleging negligent spoliation, the judge cited our analysis in Gilleski v. Community Medical Center, 336 N.J. Super. 646, 652–53 (App. Div. 2001), and noted such a claim "require[d] a showing of a causal relationship between the evidence negligently destroyed or lost . . . and plaintiff's inability to prove damages in other third-party claims." She concluded that because "Haglid present[ed] no facts to infer, and much less, to support, that the event was probably caused by a manufacturing defect, improper installation, or improper maintenance . . . . These are bare conclusions." The judge likened plaintiff's argument to "an attempt to create a strict liability claim." She entered an order dismissing plaintiff's complaint.[6]

Plaintiff moved for reconsideration, asserting, among other things, that the judge should have held a Rule 104 hearing before concluding Haglid's opinion was a net opinion. It also argued that the judge's analysis of the proximate cause issue "effectively abolishe[d] negligence-based spoliation claims."[7] In denying plaintiff's motion, the judge distinguished out-of-state decisions cited by plaintiff and concluded, "Plaintiff has done nothing to

---

[6] The judge reasoned plaintiff's cross-motion was moot. There is no order in the appellate record denying plaintiff's cross-motion.

[7] Plaintiff did not include the motion for reconsideration or defendant's opposition in its appendix. Defendant's appendix includes the judge's written statement of reasons denying the reconsideration motion. We rely on that in recounting the arguments made by the parties.

demonstrate . . . a 'reasonable probability of succeeding' in an underlying suit against the alleged responsible third-parties."

## II.

Plaintiff contends the judge should have considered the cross-motion "first," because with the benefit of an adverse inference against defendant, plaintiff met its burden of establishing a prima facie case of negligence. Plaintiff also argues that the judge misapplied the law regarding proximate cause in negligence claims based on spoilation of evidence.

We have considered the arguments in light of the record and applicable legal standards. We affirm, albeit in part for reasons other than those expressed by the motion judge. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))).

## A.

"Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition." Cockerline v. Menendez, 411 N.J. Super. 596, 620 (App. Div. 2010) (quoting Aetna Life & Cas. Co. v. Imet

Mason Contractors, 309 N.J. Super. 358, 364 (App. Div. 1998)). "[T]o a great extent our traditional approach to spoliation begins with identifying the spoliator, because that, in and of itself, will impact on the available and appropriate remedies." Robertet Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 272 (2010) (citing Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 119–20 (2008)). When the spoliator is the defendant in the suit, the court is empowered to fashion an appropriate remedy. See Cockerline, 411 N.J. Super. at 620 ("Depending on the circumstances, spoliation can result in dismissal, a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." (citing Jerista v. Murray, 185 N.J. 175, 201 (2005))).

We reject plaintiff's argument that the judge should have granted its cross-motion and considered the record evidence with a jaundiced eye, specifically by granting plaintiff an adverse inference. As the Court explained in Rosenblit v. Zimmerman,

> The best known civil remedy that has been developed is the so-called spoliation inference that comes into play where a litigant is made aware of the destruction or concealment of evidence during the underlying litigation. . . .
>
> Courts use the spoliation inference during the underlying litigation as a method of evening the playing field where evidence has been hidden or destroyed. It essentially allows a jury in the

> underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her.
>
> [166 N.J. 391, 401–02 (2001) (emphases added) (citations omitted).]

In other words, an adverse or spoliation inference may be utilized to address the intentional or negligent spoliation of evidence by a party to the suit. "[T]he factfinder is permitted to presume that the evidence the spoliator destroyed or concealed would have been unfavorable to him or her." Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 472 (App. Div. 2012) (emphases added) (citing Robertet Flavors, 203 N.J. at 273; Rosenblit, 166 N.J. at 401–02).

Here, plaintiff complains about the chance it allegedly lost to prove a third-party was responsible for the sprinkler head's release and resulting flood. Whatever an inspection of the sprinkler head may have shown would not have been "unfavorable" to defendant, because defendant played no role in the happening of the flood. Moreover, the loss of the sprinkler head was irrelevant to plaintiff's declaratory judgment suit in which it sought coverage from defendant. Plaintiff cites no published decision in which an adverse or spoliation inference was used as a remedy in similar circumstances, and our research reveals none. The adverse or spoliation inference had no place in this litigation.

B.

We address the judge's determination that Haglid's opinion was not entitled to any consideration because it was essentially a net opinion. In our review, we apply a "deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371–72 (2011) (citing Kuehn v. Pub Zone, 364 N.J. Super. 301, 319–21 (App. Div. 2003)). "However, no deference is accorded when the court fails to properly analyze the admissibility of the proffered evidence." E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 25 (App. Div. 2018) (citing Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend v. Pierre, 221 N.J. 36, 53–54 (2015) (alteration in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). "An expert's conclusion 'is excluded if it is "based merely on unfounded speculation and unquantified possibilities."'" Id. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). "The admissibility rule has been aptly described as requiring that the expert 'give the

13

why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Pomerantz Paper Corp., 207 N.J. at 372 (citing Polzo, 196 N.J. at 583).

Here, Haglid's opinions, as set forth in his report and deposition testimony, were not net opinions. He reviewed Fidellow's report and deposition testimony, including the photos Fidellow took of the sprinkler head while in his possession. Haglid reviewed other documents regarding the flood. He explained, however, that the photos and Fidellow's analysis were inadequate, primarily because Fidellow failed to consider or test for corrosion. He also considered Fidellow's conclusions that freezing or a mechanical blow did not cause the sprinkler head to release. Haglid explained the mechanism and operation of the sprinkler head. The transcript of Haglid's deposition is literally hundreds of pages.

The essential basis for the judge's criticism of Haglid's opinion was not the lack of explanation supporting his conclusions, i.e., "the why and wherefore," but rather her determination that Haglid's opinion was "devoid of any factual support regarding the proximate cause element of" plaintiff's negligent spoliation claim. In other words, because Haglid could not say within a reasonable degree of engineering certainty that the sprinkler head failure was the result of a product defect, or was caused by faulty installation or maintenance, his opinion was inadmissible. Of course, this overlooked the

14

obvious — Haglid said he could not reach a definitive conclusion precisely because he could not examine the sprinkler head.

We move on to address the adequacy of plaintiff's proximate cause proofs in the context of a negligent spoilation claim.

C.

Our courts "have also concluded that a separate claim may be appropriate if the spoliator is not a party to the litigation." Robertet Flavors, 203 N.J. at 272 (citing Jerista, 185 N.J. at 203). See, e.g., Gilleski, 336 N.J. Super. at 652 (where alleged spoliator was the defendant-hospital that failed to preserve chair which collapsed, causing plaintiff's injuries, thereby impeding his claim against the chair's manufacturer). Such a claim is "designed to remediate tortious interference with a prospective economic advantage. The prospective economic advantage being protected is a plaintiff's opportunity to bring a cause of action for which damages may be awarded." Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 482 (App. Div. 1995) (citations omitted).

Our courts have not recognized a separate tort for negligent spoliation of evidence but rather have applied traditional negligence principles. Gilleski, 336 N.J. Super. at 648–50. "[N]egligent destruction of evidence against a third party may be resolved by applying traditional negligence principles of a duty

of care, breach of that duty by defendant, and an injury to plaintiff proximately caused by defendant's breach." Swick v. New York Times Co., 357 N.J. Super. 371, 378 (App. Div. 2003) (citing Gilleski, 336 N.J. Super. at 652). In Gilleski, we never addressed the issue of proximate cause in a negligence suit based on spoliation of evidence because our focus was on whether the defendant owed the plaintiff a duty to preserve the evidence. 336 N.J. Super. at 654–55. If we view the proximately caused injury as simply plaintiff's inability to bring any lawsuit against a potentially liable third-party, without the need to demonstrate the likelihood of success in such an action, i.e., an award of actual damages, then plaintiff carried its burden for purposes of summary judgment.

However, our decision in Swick implies there is more to the prima facie case. There, the plaintiff injured his arm while working on a newspaper conveyor system for his employer, the New York Times (the Times), and he sued the successors-in-interest of the manufacturer of the machine and the company responsible for its maintenance and repair. 357 N.J. Super. at 373–74. Despite the plaintiff's repeated requests to inspect the machine, the Times sold the machine to a newspaper in the Philippines. Id. at 374.

The trial court concluded the Times had a duty to preserve the machine, and the matter proceeded to trial against all defendants. Id. at 375. However,

16

on the first day of trial, the plaintiff dismissed all claims against all other defendants, except the Times, because "[t]he manufacturer of the machine . . . had declared bankruptcy . . . and did not have any insurance, and . . . the remaining defendants had been dismissed allegedly because plaintiff could not establish a case against them without the opportunity to inspect the conveyor." Ibid. The Times moved to dismiss the complaint, arguing the plaintiff "could not establish a prima facie case of spoliation" because he could not prove damages; the trial court agreed and dismissed the complaint. Id. at 375–76.

On appeal, the plaintiff argued, among other things, that the judge erred in dismissing the complaint because any uncertainty regarding his damages was not a bar to recovery because the Times was responsible for his inability to proceed against the other defendants. Id. at 376. In writing for our court, future Justice John Wallace recapped the elements of a negligence claim based on spoliation of evidence. Id. at 378. Noting that neither party challenged the trial court's conclusion that the Times owed a duty to the plaintiff to preserve the conveyor machine, we noted "assuming the Times breached that duty, the crucial issue is whether plaintiff can demonstrate damages caused by that breach." Id. at 378–79 (emphasis added). We noted that the plaintiff failed to first pursue a discovery sanction, such as ordering the Times to pay for the

17                                                                    A-2925-19

plaintiff's expert to fly to the Philippines and inspect the machine. Id. at 379. In affirming the dismissal of the plaintiff's complaint, we said:

> We turn now to whether plaintiff presented any evidence of injury or damages proximately caused by the Times's alleged breach of a duty to preserve the equipment. As the trial court noted, plaintiff dismissed his complaint against all defendants except the Times. The proofs showed that . . . the manufacturer of the machine, was out of business, and there was no insurance coverage. Thus, even if the machine had been available for plaintiff's expert to examine, and even if plaintiff obtained a judgment against [the manufacturer], it was not disputed that plaintiff could not recover damages from [the manufacturer]. Under these circumstances, the evidence was clear that plaintiff could not prove that the Times's conduct in failing to preserve the machine proximately caused any injury to plaintiff. Consequently, judgment was properly entered in favor of the Times.
>
> [Ibid.]

In Swick, therefore, we concluded that the negligence action failed because the plaintiff could not prove that the injury the plaintiff suffered from the defendant's negligence, i.e., the loss of evidence, proximately caused the plaintiff any damage. We have, in other cases, included the requirement of proximately caused damages to the prima facie elements of negligence in spoliation cases. See Hewitt v. Allen Canning Co., 321 N.J. Super. 178, 183 (App. Div. 1999) ("[T]he tort action for spoliation affords damages to a plaintiff where the spoliator knows that litigation exists or is probable, the

18

spoliator . . . negligently destroys evidence . . . where such disruption is foreseeable, plaintiff's case is in fact disrupted, and <u>plaintiff suffers damages proximately caused by the spoliator's acts</u>." (emphasis added) (citing <u>Hirsch v. Gen. Motors Corp.</u>, 266 N.J. Super. 222, 234–37, 242–43 (Law Div. 1993))); <u>Viviano v. CBS</u>, <u>Inc.</u>, 251 N.J. Super. 113, 126 (App. Div. 1991) (including "damages proximately caused by the defendant's acts" as an element of prima facie case). Indeed, prima facie proof of actual damages is an element of all successful negligence actions. <u>See, e.g.</u>, <u>Coleman v. Martinez</u>, 247 N.J. 319, 337 (2021) ("The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, <u>and damages</u>." (emphasis added) (quoting <u>Robinson v. Vivirito</u>, 217 N.J. 199, 208 (2014))).

In <u>Kranz v. Tiger</u>, the plaintiff sued his attorneys and the expert doctor they retained, claiming the attorneys' failure to properly communicate and schedule the expert's appearance at trial, and the doctor's negligence in conveying his schedule to the attorneys, resulted in the doctor's failure to appear at trial and a settlement far below the actual value of plaintiff's injuries. 390 N.J. Super. 135, 140 (App. Div. 2007). In reversing the trial judge's directed verdicts in favor of the defendants, we noted that "[t]he most common

way to prove the harm inflicted by malpractice <u>or other misconduct that adversely affected the outcome in the underlying action</u> is a suit-within-a-suit." <u>Id.</u> at 145 (emphasis added) (citing <u>Garcia v. Kozlov, Seaton, Romanini, & Brooks, PC</u>, 179 N.J. 343, 358 (2004)). The plaintiff must demonstrate, at the least, "he would have recovered a judgment in the action against the main defendant [and] the amount of that judgment." <u>Ibid.</u> (quoting <u>Garcia</u>, 179 N.J. at 358). However, proving damages via the suit-within-a-suit method is "not the only course." <u>Id.</u> at 146 (citing <u>Garcia</u>, 179 N.J. at 358–61). In <u>Kranz</u>, the plaintiff was able to demonstrate actual damages utilizing the suit-within-a-suit method even though the critical evidence, i.e., the doctor's testimony, was absent from the underlying trial.

We recognize the difficulty in using the suit-within-a-suit method to prove damages in a negligence case based on spoilation of critical evidence because the lost evidence impedes the plaintiff's ability to prove both proximate cause for the underlying event <u>and</u> proximately caused damages. Other jurisdictions have wrestled with this knotty issue.

In <u>Boyd v. Travelers Insurance Company</u>, a case cited by plaintiff, a propane heater exploded causing severe burns to the plaintiff, and the defendant-insurer failed to preserve the heater. 652 N.E.2d 267, 269 (Ill. 1995). The court recognized the plaintiff's claim against the insurer for

spoliation of evidence applying traditional negligence principles, stating "in a negligence action involving the loss or destruction of evidence, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence <u>caused the plaintiff to be unable to prove</u> an underlying lawsuit." <u>Id.</u> at 270–71. Noting "[a]ctual damages must be alleged as well," the court held: "Consequently, a plaintiff is required to allege that a defendant's loss or destruction of the evidence caused the plaintiff <u>to be unable to prove an otherwise valid, underlying cause of action</u>. A plaintiff must prove this before the harm has been realized." <u>Id.</u> at 272 (emphasis added).

In other words, contrary to the argument plaintiff makes in its brief, <u>Boyd</u> held that the plaintiff must demonstrate likely success in the underlying case, i.e., the suit-within-a-suit. <u>See</u> <u>id.</u> at 271 n.2 ("A plaintiff must demonstrate, however, that but for the defendant's loss or destruction of the evidence, <u>the plaintiff had a reasonable probability of succeeding in the underlying suit</u>." (emphasis added)).

The Supreme Court of Alabama took a different tack in <u>Smith v. Atkinson</u>, also cited by plaintiff. 771 So.2d 429 (Ala. 2000). There, the defendants, an insurance company and its adjuster, failed to preserve a minivan involved in an accident in which the plaintiff's wife was killed. <u>Id.</u> at 431. On certification from the federal district court, the Supreme Court of

21

Alabama recognized that the plaintiff had a cause of action under traditional negligence principles. Id. at 432. The court defined the elements of such a claim, namely, that the spoliator had knowledge of pending or potential litigation, owed the plaintiff a duty to preserve the evidence, and "the missing evidence was vital to the plaintiff's pending or potential action." Ibid. The Smith court, however, parted company with Boyd on the issue of proximate causation and damages, concluding the need to prove an "'otherwise valid' [claim] places too heavy a burden on the plaintiff. Without the lost or destroyed evidence, the plaintiff cannot show that the underlying claim was valid." Id. at 434 (quoting Boyd, 652 N.E.2d at 272).

The court resolved the proximate cause issues by concluding: "Once all three . . . elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation; the defendant must overcome that rebuttable presumption or else be liable for damages." Id. at 432–33. "The third party can overcome the presumption by producing evidence showing that the plaintiff would not have prevailed in the underlying action even if the lost or destroyed evidence had been available." Id. at 435.

Additionally, the court noted that "[t]he appropriate measure of damages is difficult to determine in spoliation cases because, without the missing

A-2925-19

evidence, the likelihood of the plaintiff's prevailing on the merits cannot be precisely determined." Id. at 436. The court rejected a method adopted by another court, where the "measure of damages . . . could be the damages that would have been obtained in the underlying lawsuit, multiplied by the probability that the plaintiff would have won the suit had he had the spoliated evidence." Id. at 437 (quoting Petrik v. Monarch Printing Corp., 501 N.E.2d 1312, 1320 (Ill. App. 1986)). Ultimately, the Smith court concluded,

> without the spoliated evidence, the plaintiff's probability of success is too tenuous a measure to be consistently applied and that any attempt to apply it would constitute pure speculation. Therefore, in determining damages, we reject the use of probability of success as a benchmark, in favor of the use of compensatory damages that would have been awarded on the underlying cause of action, if the defendant cannot overcome the rebuttable presumption.
>
> [Id. at 438.]

Other jurisdictions have adopted the Smith court's use of a rebuttable presumption on the issue of proximately caused injury and damages in spoliation litigation. See Rizzuto v. Davidson Ladders, Inc., 905 A.2d 1165, 1178–82 (Conn. 2006) (applying presumption as to proximate cause and damages while recognizing independent tort of intentional spoliation of evidence); Hannah v. Heeter, 584 S.E.2d 560, 569–71 (W.Va. 2003) (applying Smith standards to negligent spoliation claim).

Other courts have rejected the creation of any presumption in the proximate cause analysis and followed some modification of Boyd's "reasonable probability of succeeding" burden. For example, in Holmes v. Amerex Rent-A-Car, the District of Columbia Court of Appeals, in recognizing a separate tort for negligent spoliation of evidence, concluded a plaintiff must demonstrate in addition to the existence of a duty and breach of that duty, "the underlying lawsuit was significantly impaired, that the spoliated evidence was material to that impairment and that the plaintiff enjoyed a significant possibility of success in the underlying claim." 710 A.2d 846, 850 (D.C. Cir. 1998) (emphasis added). The court explained the difficulty in defining the plaintiff's proximate cause burden:

> These countervailing interests — the plaintiff's interest in recovery for lack of ability to prove the underlying case, and the defendant's interest in only compensating plaintiff for defendant's harmful negligence or recklessness — must be balanced in determining the standard of proof for causation in an independent action for negligent or reckless spoliation of evidence.
> This adds a unique characteristic to the tort. Not only must the plaintiff show that an expectancy of recovery was harmed, but also that such an expectancy realistically existed. Specifically, proximate cause must include two showings. First, it must be shown that the defendant's actions proximately caused some level of impairment in the plaintiff's ability to prove an existing underlying civil claim. Second, in order to show that defendant's actions proximately caused any

24

damages, it must be shown that plaintiff's underlying claim was, at some threshold level, meritorious.

[Id. at 850–51.]

After surveying decisions from other jurisdictions applying diverse standards for determining proximate cause in spoliation litigation, the court held

in order to demonstrate causation, a plaintiff must demonstrate that (1) the underlying claim was significantly impaired due to the spoliation of evidence; (2) a proximate relationship exists between the projected failure of success in the underlying action and the unavailability of the destroyed evidence; and (3) that the underlying lawsuit would enjoy a significant possibility of success if the spoliated evidence were still in existence.

[Id. at 852 (emphasis added).]

Interestingly, the Holmes court nonetheless applied the discount method for determining damages, where the total damages are multiplied by the probability of success in the underlying lawsuit. Id. at 853.

The Supreme Court of Montana adopted the same "significant possibility of success" causation standard. Oliver v. Stimson Lumber Co., 993 P.2d 11, 20–21 (Mont. 1999) (adopting Holmes' analysis). That standard was "lower than the standard of 'preponderance of the evidence.' . . . [A] plaintiff must demonstrate a substantial and realistic possibility of succeeding, but need not demonstrate that such success was more likely than not." Id. at 21. The court in Oliver also applied a discount formula to the calculation of damages. Ibid.

Plaintiff contends the motion judge should not have required that it demonstrate a likelihood of success in an underlying suit against the sprinkler manufacturer, installer, or maintenance company. It argues, quite descriptively, that adopting such a standard means "the damages element is thus pit against the proximate cause element." Although not specifically urging adoption of the Smith presumption in spoliation situations, plaintiff contends it sufficiently demonstrated defendant's negligence proximately caused its injury and damages to permit the case to proceed to a jury.

We would not presume to adopt such a far-reaching approach as that endorsed by the Alabama Supreme Court in Smith. "[O]ur role as an intermediate appellate court is to follow the dictates of the Supreme Court . . . ." RSB Lab'y Servs., Inc. v. BSI, Corp., 368 N.J. Super. 540, 560 (App. Div. 2004) (citing Nixon v. Lawhon, 32 N.J. Super. 351, 355 (App. Div. 1954)). Our restraint is particularly warranted when it comes to expansion of "established law." Rodriguez v. Cordasco, 279 N.J. Super. 396, 405 (App. Div. 1995). Nor, for the same reasons, do we specifically adopt the "significant possibility of success" standard adopted by the court in Holmes.

Although the Court has yet to speak directly to the proximate cause issue in negligence cases based on spoliated evidence, for purposes of avoiding summary judgment, the well-established elements of a negligence claim

required plaintiff to marshal sufficient proof to have avoided dismissal at trial under Rule 4:37-2(b). Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995). Dismissal under Rule 4:37-2(b) is only appropriate "where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008)). Plaintiff's burden included proof of proximately caused damages. Robinson, 217 N.J. at 208; see also Model Jury Charges (Civil), 1.12O, "Damages" (approved Nov. 1998) (explaining that plaintiff has the burden of showing "the damages were the natural and probable consequences of the defendant's negligence. . . . Damages may not be based on conjecture or speculation.").

Plaintiff may have presented a prima facie case that it suffered an "injury" proximately caused by defendant's negligence because it could not initiate a lawsuit against a potential third-party without the ability to inspect the sprinkler head; however, Haglid's opinions did no more than point a finger at three possible defendants potentially responsible for the untimely sprinkler discharge. The opinions did not explain why any one of those defendants' product, installation, or maintenance caused plaintiff's damages.

A-2925-19

One possible defendant was the manufacturer of the sprinkler head, who advised Fidellow the product was no longer produced and never recalled. Fidellow, who actually examined the sprinkler head, explained "that there was some weakness in the internal elements of the head that eventually let loose" when the sprinkler head discharged. That seemingly pointed to a possible product defect, yet the record is devoid of any further attempts by plaintiff to develop through discovery or otherwise additional information about the device from the manufacturer. Nor did Haglid explain why Fidellow's opinion, albeit insufficient in his mind to prove a product defect, was not significant enough to help Haglid limit the likely cause of the discharge.

Another candidate was the installer of the system, which plaintiff itself engaged as part of the improvements done for the GSA lease. The installer had actually started suit against plaintiff in New York courts to recover monies it claimed were owed by plaintiff. However, the record lacks any information demonstrating plaintiff took additional steps to discover whether the general contractor or subcontractor it engaged were potentially responsible, or at least provide Haglid with additional information in that regard.

The third candidate was the inspection/maintenance service plaintiff hired to routinely inspect and service the sprinkler system. The record includes the contract with that company and some of its inspection reports.

28

There is nothing else demonstrating plaintiff's efforts to obtain further information for Haglid's consideration, nor did Haglid rebut Fidellow's conclusion that the inspection reports were not helpful in determining the cause of the discharge.

We hasten to add that plaintiff's failure was not as to the amount of damages it allegedly sustained by being unable to litigate its claims against any of the three potential third parties Haglid identified. Our courts have permitted "considerable speculation" by the fact finder in that regard. V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 424 (App. Div. 2002). However, "[t]he rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount." Tessmar v. Grosner, 23 N.J. 193, 203 (1957) (emphasis added) (citing Oliver v. Autographic Reg. Co., 126 N.J. Eq. 18, 25 (Ch. 1939)).

Plaintiff was required to demonstrate not only the lost opportunity to pursue a case against the manufacturer, installer, or maintenance provider because of defendant's spoliation of the sprinkler head, but also that it suffered actual damages because of defendant's negligence. As to this second aspect of the proximate cause element, plaintiff was not required to demonstrate the underlying suit would have succeeded, but it needed to marshal more than simply an expert's opinion that there could have been three reasons for the

29                                                              A-2925-19

sprinkler head's failure and, hence, three possible target defendants. Plaintiff failed to do so, and, as a result, the judge properly granted summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION